*667 OPINION.
Love:
The petitioner contends that the holders of the preferred stock, issued in the form and amount as set forth in the findings of fact, are its creditors and not its stockholders.
The respondent takes the position that the holders of the preferred stock were stockholders and has disallowed for that reason the deductions claimed by the petitioner, and has included in the petitioner’s invested capital the prorated proceeds of the sale of the preferred stock. If the holders of the preferred stock are stockholders and not creditors of the petitioner the respondent did not err in disallowing the deduction claimed in the amount of $23,488.88 for the reason that that amount represented dividends paid and accrued to the preferred stockholders. Arthur R. Jones Syndicate v. Commissioner, 5 B. T. A. 853; neither did he err in disallowing the deduction claimed on account of discount at which the preferred stock was sold, nor on account of the expenses incident to the issue and sale of the preferred stock. Appeal of Emerson Electric Manu *668 facturing Co., 3 B. T. A. 932. We must look solely, therefore, to the contract between the petitioner and the holders of the preferred stock in order to determine the relationship existing between them. The contract between the petitioner and the holders of the preferred stock is set out above, and stated briefly, it provides that 7 per cent cumulative dividends shall be paid to the preferred stockholders out of surplus or net profits when and as determined by the board of directors; that upon dissolution of the petitioner dividends accrued and unpaid shall be paid out of general assets, if the surplus is insufficient, and also that the stock shall be redeemed at $102.50 per share; that the preferred stock shall have no voting rights; that while any preferred stock is outstanding the petitioner can not, except under certain conditions, create any shares having priority over the preferred stock, can not mortgage any of its property or issue bonds secured by mortgage or create.any unsecured indebtedness maturing later than one year from the date of issue or do anything that would impair its efficiency as a going concern; that an excess of current assets over current liabilities must be maintained in an amount of at least 150 per cent of the preferred stock outstanding; that a sinking fund must be established for the purpose of redeeming the preferred stock and into which the petitioner must pay specified sums annually; that the preferred stock shall be subject to redemption at $102.50 per share plus accrued dividends upon certain notice given.
In the Appeal of I. Unterberg & Co., 2 B. T. A. 274, we stated:
It can not be doubted that the nature of an instrument may, because of its terms and the circumstances of its issuance and subsistence, be held to be different from what it is denominated. The decisions are numerous in which the courts have held bonds to be stock * * *.
Considering the contract between the petitioner and the preferred stockholders, we are of the opinion that there is nothing therein which takes the holders of the preferred stock out of the class of stockholders. To be sure the holders of this class of stock are preferred in such a manner that they are almost certain to have their stock redeemed. However, a preference over common stockholders makes them none the less stockholders. It appears to us that the contract between the petitioner and the preferred stockholders evidenced only an intention to create and maintain a preference in favor of the preferred as against the common stock.
In Arthur R. Jones Syndicate v. Commissioner, supra, we stated that the fundamental characteristic of a share of stock is that the holder is a coowner of the business and not a creditor and that a share of stock carries the right to share in surplus profits and assets after corporate debts are paid. In the instant appeal it is clear that at any time befor-e dissolution of the petitioner dividends were *669 to be paid only out oí surplus and net profits, and upon dissolution the preferred stock would be preferred as against the common stock in the distribution of assets. It is equally clear that corporate debts would have to be paid first.
The case of Spencer v. Smith, 201 Fed. 647, dealt with the question as to whether holders of preferred stock which was secured by a mortgage on the corporation’s property were stockholders or creditors of the corporation. The court decided that corporate preferred stock which guaranteed 10 per cent out of net profits, reserved the corporation the right to redeem after a sjiecified date, bound it to redeem before a later date, and provided that the holders on failure to pay dividends, might foreclose a trust mortgage given to secure the stock on all the corporation’s property, in which the preferred stockholders were entitled to participate ratably, did not constitute the holders thereof creditors of the corporation even though upon dissolution of the corporation and distribution of the assets the preferred stockholders were given a preference of $11 per share. In considering the case the court stated:
We are therefore of the opinion that the present holders of the preferred stock of the corporation are not creditors thereof, but stockholders; that the provision contained in the certificate of the preferred stock, giving a preference of eleven dollars per share to the holders thereof, refers only to the distribution of assets as between stockholders, and has no reference to the distribution of assets for the payment of the debts of the corporation; that, if by any interpretation it could be construed as referring to the distribution of assets to pay debts, then it is void as against public policy. These views are sustained by an 'examination of the certificate of stock and the decisions of the courts. What parties to a contract may call it, of course, is not binding upon the courts if it is clearly something else. Still in arriving at the intention of the parties, we may look to the language which they used in reducing their contract to writing.
* * * * * * *
If thereafter the corporation made profits, the holder of any preferred stock would receive dividends; and if at any time the corporation was dissolved and its assets were distributed, the preferred stock would be preferred as against the common stock. The performance of this agreement could be and was secured by a mortgage. This view renders the transaction reasonable and valid.
Examining, in the light of principles laid down, the provisions contained in the agreement between the petitioner and preferred stockholders, we are of the opinion that the preferred stock did not represent merely an indebtedness of the petitioner to the holders thereof, but, on the contrary, represented shares in the petitioner’s business. The amount of $28,488.88 paid and accrued to the holders of preferred stock during the year in question constituted, therefore, dividends, and as such is not deductible. The determination of the respondent in disallowing the deduction taken on account of discount *670 and expenses with respect to the preferred stock issued by the petitioner is also approved.
The respondent alleges in his amended answer that he erred in computing the petitioner’s invested capital for the taxable period ended August 31, 1920, in that he excluded therefrom only the prorated amount of the 1919 Federal taxes paid by the petitioner instead of the full amount thereof. In the Appeal of Russel Wheel & Foundry Co., 3 B. T. A. 1168, we held that adjustments made in accordance with article 845, Regulations 45, Revised January 28, 1921, were correct and accordingly approved the exclusion from invested capital for a taxable year the prorated amount of Federal taxes for the preceding year which are due and payable. We, therefore, affirm the determination made with respect to the petitioner’s invested capital for the period ended August 31, 1920.
Judgment will be entered on 15 days’ notice, under Rule 50.
Considered by Thitssell and Littleton.